UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES ANTHONY ROSSOW JR,

                         Plaintiff,

v.                                            **DECISION AND ORDER**
                                                          14-CV-526S

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.


       1.       Plaintiff James A. Rossow Jr., challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). In June 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income. The Commissioner of Social Security ("Commissioner") denied both applications on November 7, 2011, after which Plaintiff requested an administrative hearing. Plaintiff received that hearing before ALJ Donald McDougall on December 7, 2012. The ALJ considered the case *de novo*, and on January 24, 2013, issued a decision denying Plaintiff's applications. Plaintiff filed a request for review with the Appeals Council, but the Council denied that request, prompting Plaintiff to file the current civil action on June 30, 2014, challenging Defendant's final decision.[1]

       2.       On November 10, 2014, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8). The Commissioner followed suit with her own motion on January 9, 2015. (Docket No. 10). For the following reasons, the Commissioner's motion is granted and Plaintiff's motion is

---

[1] The ALJ's January 24, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

denied.

3. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

4. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

5.	The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

6.	This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

7.	The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national

economy that a person having the claimant's qualifications could perform.  See 42 U.S.C.§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

8. In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since September 1, 2010, his alleged onset date (R. at 15);[2] (2) Plaintiff's coronary artery disease status post two myocardial infarctions requiring multiple stent placements is a "severe" impairment (R. at 15); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 16); (4) Plaintiff retains the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), subject to a few restrictions. (R. at 16); and (5) given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. at 22). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from September 1, 2010, through the date of his decision. (R. at 23).

9. Plaintiff raises two challenges to the ALJ's decision:  First, Plaintiff argues that the ALJ's rejection of Dr. Sofat's treating source opinion was not based on substantial evidence.  Second, Plaintiff contends that the ALJ's RFC determination is not supported by the medical opinions that he relied upon.  Each argument will be discussed in turn.

10. Plaintiff first contends that the ALJ improperly discounted Dr. Sofat's treating source opinion that Plaintiff had been completely disabled since his second heart attack

---

[2]Citations to the underlying administrative record are designated "R."

4

in 2009. According to the "treating physician rule," the ALJ must give controlling weight to a treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). However, a conclusory assertion by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(d)(1). If an ALJ does not agree with a treating source opinion, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129-130 (2d Cir. 2008).

Here, Dr. Sofat stated on two different questionnaires that Plaintiff had been disabled since 2009 because of his prior heart attacks in 2004 and 2009. (R. at 20, 328-29, 350-54). ALJ McDougall gave this opinion little weight despite the fact that Dr. Sofat is Plaintiff's current treating cardiologist. (R. at 21). ALJ McDougall supported his rejection of Dr. Sofat's opinion with three reasons.

First, the ALJ found that Dr. Sofat "admitted that his November 2012 medical source statement . . . was based on [Plaintiff's] subjective report of symptoms and limitations." (R. at 21). Plaintiff argues that Dr. Sofat's report does not actually contain this admission, but instead the ALJ improperly relied on a handwritten notation on the bottom of the RFC questionnaire that ambiguously stated "Information obtained from patient[ on] 11-13-12." (Pl's Mem of Law at 14). Plaintiff claims that this assumption was speculative and that the note merely reflected that Plaintiff's reported subjective complaints were from

5

"up to date reports." (Id.) However, that same page of the questionnaire specifically requested that Dr. Sofat indicate what "clinical findings, laboratory and test results" showed Plaintiff's medical impairments. To this, Dr. Sofat merely concluded "P[atient] disabled since 2009. H/o heart attack x2 2004, 2009," and neither this questionnaire nor the other form the physician completed lists which objective tests Dr. Sofat performed and found supportive of these conclusions. (R. at 350.) Instead, both forms merely repeat the assertions that Plaintiff "does not work" or has been "unable to work" since 2009, despite the fact that Dr. Sofat did not begin treating Plaintiff until 2011. (R. 20-21, 328-29, 350-54.) Thus, the ALJ was permitted to give less weight to this medical opinion based on conclusory assertions and Plaintiff's subjective statements rather than objective findings. Ford v. Astrue, No. 1:06-cv-1227, 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010); see 20 C.F.R. § 404.1527(d).

Second, the ALJ further found that Dr. Sofat's opinion was not supported by his treatment records, which "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant was, in fact, disabled." (R. at 21). As the ALJ notes, Dr. Sofat's objective findings and Plaintiff's subjective complaints from examinations in January and July 2012 were unremarkable. (R. at 20; see R. at 337 (noting, in relation to Plaintiff's heart, on and off heartburn and a prior coronary angiogram test); 333 ("feels well"); 334 (referencing only "back pain" in June 2012 physical).) The ALJ further referenced Dr. Sofat's June 2012 findings that Plaintiff had only moderate limitations in walking and standing, with no limitation in sitting; in contrast, on the November 2012 RFC questionnaire, Dr. Sofat asserted that Plaintiff could only sit for about 4 hours. (R. at 329, 352.)

Third, as the ALJ concluded, Dr. Sofat's opinion is inconsistent with other evidence

6

in the record. (R. at 21). Plaintiff contends that objective evidence supporting Dr. Sofat's opinion can be found in November 2011 cardiac test results that revealed a left ventricle ejection fraction of 45-50 percent, mild mitrial regurgitation, and trace tricuspid regurgitation.[3] (Pl's Mem of Law at 15; R. at 300). The ALJ noted these findings, including the fact that this ejection fraction finding was "slightly low." (R. at 18).The ALJ went on, however, to note that Plaintiff nonetheless had no complaints of chest pain in December 2011. (R. at 19, 304-05). Further, additional ejection fraction testing in January 2010 ("55% to 60% (pretty normal)"), August 2010 (58%), December 2011 (56%) were consistently higher. (R. at 18-19, 242, 321, 381-82). The ALJ properly considered Dr. Sofat's opinion and sufficiently detailed his decision to afford it little weight. Plaintiff's first argument is rejected.

11. With respect to Plaintiff's second contention, Plaintiff contends that the ALJ's RFC assessment is not supported by the medical opinions on which he relied. The ALJ is solely responsible for determining a claimant's RFC based on his evaluation of medical and other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2). The Second Circuit has noted that "[a] lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Woodmacy v. Colvin, 577 F. App'x 72, 74 (2d Cir. 2014) (citing Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).

Here, the ALJ found that Plaintiff had the RFC:

---

[3]As stated in Plaintiff's memorandum, mitral valve regurgitation is when the heart's mitral valve doesn't close tightly, allowing blood to flow backward in the heart. Similarly, tricuspid regurgitation is a disorder in which the valve separating the right lower heart chamber from the right upper heart chamber does not close tight enough. Ejection fractions demonstrate heart functioning: an ejection fraction ranging from 40-55 percent is considered "below normal." An ejection fraction below 40 percent is consistent with heart failure and an ejection fraction below 35 percent may be life threatening. (Pl's Mem of Law at 15-16.)

7

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he requires the option to change position every one-half hour. [Plaintiff] should not climb ladders, ropes, or scaffolds. He should not be exposed to extremes of temperatures, fumes, dusts, or gases. He can tolerate no more than occasional contact with the public, co-workers, or supervisors, and no more than occasional changes in work processes.

(R. at 16). Light work involves lifting no more than 20 pounds at a time with frequent lifting or carry of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b); 416.967(b). In making this RFC determination, the ALJ gave great weight to the medical opinions of consultative examiners Dr. Kelley and Dr. Schwab, as well as treating physician Dr. Conley. He also gave some weight to the medical opinion of primary care physician Dr. Eaton. (R. at 21). Further, the ALJ also expressly relied to an extent on Plaintiff's own testimony regarding his abilities and limitations. (R. at 20-21.)

Initially, Plaintiff is correct that Dr. Conley's conclusory assertion that Plaintiff was released to "[l]ight duty activity" following a January 2012 cardiac catheterization would be, without more, insufficient to support a light duty RFC finding. See Weatherby v. Comm'r of Social Security, No. 1:05-CV-1531 (LEK/RFT), 2008 WL 4104686, *8 (N.D.N.Y. Sept. 3, 2008) (improper to rest an RFC determination *entirely* on a physician's conclusion that the claimant could perform light duty work where that physician's definition of the phrase was unknown). Here, however, the ALJ's determination was not exclusively based on that opinion, and this Court finds that ALJ appropriately noted Dr. Conley's conclusion nonetheless undermined Dr. Sofat's statements that Plaintiff was totally disabled from working.

Contrary to Plaintiff's argument, Dr. Schwab's opinion that Plaintiff was restricted to "walking [no] more than a quarter mile due to coronary artery disease" is not inconsistent with the ALJ's determination that the Plaintiff could stand for one half-hour every hour. (R.

8

at 267; see R. at 16 (finding that Plaintiff required the "option to change position every one-half hour"). Instead, this sit-stand option is consistent with the need to limit walking in order to control Plaintiff's level of exertion, and also consistent with Plaintiff's own testimony regarding his abilities. (R. at 51 (testifying he could sit for 20 minutes and had no problem with sitting as long as he could move around every few hours), 52 (agreeing that he could get through a full eight-hour day by changing positions between sitting and standing); see also R. at 64 (expressly incorporating this sit/stand option into the hypothetical presented to the vocational expert)). Similarly, by incorporating limitations into Plaintiff's RFC to preclude exertion that would cause heart problems in the first place, the ALJ's determination is also consistent with Dr. Kelley's opinion that Plaintiff should take comfort breaks from exertion so "as not to produce shortness of breath, chest pain, or palpitations." (R. at 232). Moreover, the ALJ also credited in part Plaintiff's testimony that the primary triggers for his heart problems were stress and anxiety, and specifically included an additional preventive limitation in the RFC that would guard against the onset of problems. (R. at 16 ("no more than occasional contact with the public, co-workers, or supervisors, and no more than occasional changes in work processes"), 21 (giving Plaintiff "the benefit of any doubt with regard to how he is affected by stress"), 47 (Plaintiff's testimony that "anxiety and stress . . . cause[] the heart problems," requiring him to sit and breathe deep)).

Accordingly, this Court finds that the ALJ relied on substantial evidence when rendering his RFC determination, and Plaintiff's second argument is rejected.

12. Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence. Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated:  August 26, 2015
        Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge